UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER JAY SANCHEZ,

    Plaintiff,

v.

KAREN BRUNSON *et* al.,

    Defendants.

CASE NO. C08-5461RJB/JRC

REPORT AND RECOMMENDATION

Noted for July 24, 2009

    This 42 §1983 Civil Rights matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrate Judge's Rules MJR 1, MJR 3, and MJR 4. Before the court is defendants' motion for summary judgment (Dkt # 32). Plaintiff did not respond to the motion. Local Rule 7 in pertinent part states:

> If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.

See Local Rule 7 (b)(2).

REPORT AND
RECOMMENDATION - 1

## FACTS

Plaintiff alleges that as a result of being a confidential informant he was assaulted in 2002, and again in 2004, by members of a gang called the "Surenos." He brings this action claiming a violation of his Eighth Amendment right to be free from cruel and unusual punishment, not only for the assaults, but because prison officials are again considering housing him in a close custody general population setting. Plaintiff asks that he be housed at Twin Rivers Correction Center or Autanaum View Correction Center (Dkt. # 24). Plaintiff asks for monetary damages and he asks to be separated from any inmate he reports is a threat to him (Dkt. # 24). He also requests federal oversight of the state prisons (Dkt. # 24).

There are three named defendants remaining in this action after plaintiff filed his amended complaint (Dkt. # 24). Mr. Mc Garvie is named for allegedly failing to protect plaintiff in 2004 when he was assaulted by an alleged Sureno gang member within hours of being placed in a general population unit. The other two defendants, Mr. Riley and Mr. Blakeman, are named for allegedly trying to move plaintiff from segregation back into a close custody general population unit over the last several years.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

REPORT AND
RECOMMENDATION - 2

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also*, Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, supra, 809 F.2d 626, 630 (9th Cir. 1987).

The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested to by the party contradict facts specifically attested to by the moving party. *Id*.

## DISCUSSION

Plaintiff did not respond to the motion for summary judgment. Accordingly, the court accepts as a verity the statement of facts as summarized in the motion for summary judgment and supported by the Declaration of William Riley (Exhibit 1). Defendants state:

> William Riley is currently employed by the Washington DOC as the Security Threat Group ("STG") coordinator for DOC. Security threat groups are typically gangs but may include other groups that pose a threat to the orderly operation of DOC facilities and/or the health and safety of inmates or staff. Mr. Riley has worked for DOC for over 22 years and has been the DOC STG coordinator for over 10 years. Exhibit 1, Declaration of William Riley.
> As the STG coordinator, Mr. Riley consults with DOC investigators and managers on issues related to STGs. He oversees the statewide STG database that documents STGs within DOC. Since early 2006 Mr. Riley has conducted the majority of intake interviews of new DOC inmates coming into the Washington Corrections Center in Shelton, Washington. These interviews are conducted to attempt to determine if the inmate is a member of or associated with a STG. Mr. Riley assists with training DOC staff statewide on STG identifiers, the STG database, and other issues related to STGs. Id.
> Mr. Riley does not supervise any DOC staff, either directly or indirectly. He is not involved in inmates' classification or in determining at what institution(s) an inmate can or will be housed. Mr. Riley is also not involved in establishing

"separatees" for inmates. "Separatees" are inmates who DOC has determined cannot be housed together or have access to one another because they would be a threat to one another. Although Mr. Riley does not have any responsibilities concerning classification, transfers, or separatees, he may consult with or provide information to DOC staff who have such responsibilities. Id.

To the best of Mr. Riley's recollection, he interviewed the Plaintiff in this case, Christopher Sanchez, only once, which was in March 2007. He determined that Mr. Sanchez was associated with a STG and Mr. Sanchez agreed that he would be considered by many inmates to be associated with that particular STG. Mr. Riley placed this STG association in DOC's STG database. He has received several letters from Mr. Sanchez in which he claims that he may have problems with the Sureno STG because he had provided information against a Sureno STG member. Mr. Sanchez also claimed that there were several court cases or court documents that showed him to be an informant against other inmates, however, he never provided them to Mr. Riley. Id.

Mr. Riley has briefly reviewed Mr. Sanchez' OMNI records which indicate that Mr. Sanchez has not been assaulted or attacked since 2004. These records also indicate that 2 separatees have been placed in Mr. Sanchez' records. These separatees are the two inmates who had physical altercations with him. In March 2007 Mr. Sanchez provided Mr. Riley a lengthy list of inmates he thought he should be separated from and he passed this information on to DOC staff responsible for determining whether or not the requested separatees should be placed in Mr. Sanchez' OMNI records. Mr. Riley has never ignored or been indifferent to Mr. Sanchez' concerns for his safety. Id.

Steve Blakeman is currently employed by the Washington DOC as a Correctional Unit Supervisor (CUS) at the Clallam Bay Corrections Center (CBCC) in Clallam Bay, Washington. He has worked for DOC for nearly 20 years. Exhibit 2, Declaration of Steve Blakeman.

Plaintiff Christopher Sanchez arrived at CBCC on March 18, 2008. Mr. Sanchez had previously been housed at CBCC but had not been at CBCC since September 2005. In April 2008 Mr. Sanchez was placed on administrative segregation pending review of an appropriate housing assignment. Mr. Blakeman's involvement with him as CUS was minimal as he was not a behavioral problem during this time. On July 1, 2008 Mr. Blakeman was assigned to the position of Administrative Segregation Hearing Officer at CBCC. He participated in most of the administrative segregation hearings for Mr. Sanchez from that point. During their administrative segregation meetings the primary topic was identification of an appropriate housing assignment for Mr. Sanchez. Mr. Sanchez stated he was afraid to go into any close custody general population [unit] and that he felt that Hispanic gangs would hurt him. Id.

The Washington State Penitentiary (WSP) was opening a gang unit with separation between rival factions. This seemed on its face to be an appropriate housing option for Mr. Sanchez. As such, Mr. Blakeman discussed this with Mr. Sanchez to see whether he could reside in a setting where the STG factions were separated. Mr. Sanchez was adamant that he could not reside at WSP in this setting. Consequently, Mr. Blakeman never submitted any recommendation that he be transferred to WSP. Id.

REPORT AND
RECOMMENDATION - 4

> Mr. Blakeman was aware that Mr. Sanchez had previously had problems being housed in general population at CBCC. These problems appeared to Mr. Blakeman to be related as much to Mr. Sanchez' personal issues and activities as to his gang related issues. As such, Mr. Sanchez was retained in segregation for his own safety. In July of 2008 Mr. Sanchez agreed to go into the Step-Down Program at CBCC. The first phase of the Step-Down Program is 6-9 weeks long and is in segregation. The remainder of the Step-Down Program is in a self-contained close custody unit. The Step-Down Program is designed to gradually integrate long-term segregation offenders back into the general prison population and is part of DOC's Re-Entry Initiative to prepare offenders for re-entry back into society. Id.
>
> To the best of Mr. Blakeman's knowledge, Mr. Sanchez has not been assaulted or attacked since 2004. Mr. Sanchez' safety concerns were always fully considered which resulted in him being in segregation long term at CBCC and eventually in the Step-Down Unit. The CBCC segregation unit and Step-Down Unit are highly secure units that provide maximum safety to inmates. Mr. Blakeman has never ignored or been indifferent to Mr. Sanchez' safety concerns. Mr. Sanchez is currently not on Mr. Blakeman's caseload or the caseload he supervises. As such, Mr. Blakeman will in all likelihood have no involvement in, or authority over, Mr. Sanchez' future classification, placement, or possible transfer.

(Dkt. # 32, pages 2 to 5).

## DISCUSSION

A.  *Statute of limitations*.

The Civil Rights Act, 42 U.S.C. § 1983, contains no statute of limitations and the federal courts use the applicable statute of limitations from the state in which they sit. In Washington the statute of limitations for filing a civil rights action is three years. Rose v. Rinaldi, 654 F.2d 546 (1981). Defendants have raised the affirmative defense of the statute of limitations and argue any claim for failure to protect from assault is barred. This would include all claims against defendant McGarvie (Dkt. # 32, pages 5 and 6).

The undisputed facts are that the last assault occurred in 2004. This action was filed in July of 2008, over three years later. None of the alleged assaults are properly part of the action. The court recommends that defendant McGarvie's motion for summary judgment be GRANTED and he should be DISMISSED from this action WITH PREJUDICE.

B.  *Deliberate indifference*.

REPORT AND
RECOMMENDATION - 5

To state a claim of cruel and unusual punishment plaintiff must satisfy two requirements: First, the deprivation alleged must be, objectively, "sufficiently serious." For a claim based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994). Second, "[t]o violate the Cruel and Unusual Punishment Clause, a prison official must have a 'sufficiently culpable state of mind' … [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." Id. (citations omitted). The prison official will be liable only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1979. Plaintiff has failed to support any of his allegations with facts sufficient to create a genuine issue of fact.

1.  *Defendant Riley.*

Plaintiff has not contested defendants' facts. Defendant Riley states that he passed on the information plaintiff gave him concerning the persons who may pose a threat to him. Mr. Riley states that he gave this information to the people responsible for determining whether or not the requested separatees should be placed on Mr. Sanchez's OMNI records. Mr. Riley does not make decisions regarding placement or classification (Dkt # 32, page 2 and 3). Plaintiff fails to show Defendant Riley was deliberately indifferent to his concerns.

2.  *Defendant Blakeman.*

Again, Plaintiff has not contested defendants' facts. Defendant Blakeman worked with plaintiff to try and move plaintiff out of long-term segregation. When plaintiff expressed concerns that he would not be safe at the Washington State Penitentiary in a special unit separating gang fractions, defendant Blakeman honored plaintiff's concerns and

did not submit a recommendation that plaintiff be transferred to the Penitentiary (Dkt # 32, page 4). Mr. Blakeman states that he is aware of plaintiff's previous problems being housed in a general population unit, but that plaintiff agreed to attempt to complete a "step down" program and reintegrate into general population. According to defendant Blakeman, the step down unit is highly secure and provides "maximum safety to inmates." (Dkt. # 32, page 4). Plaintiff fails to show Defendant Blakeman was deliberately indifferent to his safety.

The court recommends that defendants' motion for summary judgment be GRANTED and this action be DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated in this Report and Recommendation this action should be DISMISSED WITH PREJUDICE. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Fed. R. Civ. P., the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on July 24, 2009, as noted in the caption.

Dated this 16th day of June, 2009.

J. Richard Creatura
United States Magistrate Judge